IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:18-cr-00285 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| LASHAMUS JARREAU KENNEDY ) | |

## **MEMORANDUM OPINION**

Before the Court is Defendant's Motion to Suppress, in which Defendant seeks to suppress statements made after his arrest on April 13, 2019. (Doc. No. 18). The Government filed a response in opposition (Doc. No. 20). On May 9, 2019, the Court held an evidentiary hearing on the motion. Thereafter, each party filed a post-hearing brief (Doc. Nos. 33, 34). For the reasons discussed below, Defendant's Motion to Suppress will be granted.

## **FACTUAL FINDINGS[1]**

Defendant is charged in this case with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), based on an incident that occurred at the Love's Truck Stop on Trinity Lane in Nashville. (Doc. No. 1; Doc. No. 31 ("Tr.") at 14). On April 13, 2018, Officer Progar of the Metropolitan Nashville Police Department was filling up gas for his patrol car at the truck stop

---

[1] The Court makes these factual findings based on the cited testimony of Sergeant Lowry (the sole live witness) from the suppression hearing (as set forth in the hearing transcript, Doc. No. 31) and the parties' joint stipulation concerning the testimony that would have been provided by Officer Progar (Doc. No. 32). In relying herein on specific cited testimony, the Court has determined that it is credible for one or more reasons, including, for example, that it was delivered by the witness in a credible manner, was uncontradicted by any other evidence, was not successfully impeached, is inherently uncontroversial or otherwise believable, and/or was supported at least generally by other evidence. As discussed below, the Court resolves a possibly important discrepancy—regarding what Officer Progar told Sergeant Lowry—between the stipulated testimony of Officer Progar and the testimony of Sergeant Lowry by adopting the testimony of Officer Progar on the topic of the discrepancy. In fact, the Government itself has done likewise. (Doc. No. 33 at 2, 9 n.4). In finding contrary to Sergeant Lowry on this one point, the Court does not imply that he was generally not credible or testified in bad faith; on the contrary, as reflected herein, the Court has accepted much of Sergeant Lowry's testimony as accurate. Instead, the Court concludes that Sergeant Lowry either mistakenly misheard at the time in question, or incorrectly recalled at the time of testifying, what Officer Progar had told him.

1

when a concerned citizen informed him that a female driver seemed intoxicated. (Doc. No. 32.)[2] Officer Progar approached the female driver to speak with her as she was coming out of the gas station. (*Id.*) Officer Progar and the female driver spoke right next to her white Ford Expedition (the "Vehicle"). (*Id.*) Defendant was sitting on the passenger side in the Vehicle. (*Id.*) After that initial contact, Officer Progar went back to his patrol car with the female driver's ID to check to see whether she had any outstanding arrest warrants, while the female driver got back into the Vehicle. (*Id.*) Officer Progar's patrol car was parked at a 7 or 8 o'clock position relative to the Vehicle's 12 o'clock position. (*Id.*)

In his patrol car, Officer Progar discovered that the female driver had an outstanding arrest warrant, and immediately placed a call for backup, to which Sergeant Richard Lowry responded.

---

[2] As indicated above, Doc. No. 32 constitutes a written stipulation that had been read into the record at the suppression hearing. The content of the stipulation was a proffer of arguably important testimony that would have been offered by Officer Progar (who was reportedly out of town at the time of the hearing) had he testified. The evident purpose of the stipulation was to disclose to the Court grounds to believe that Sergeant Lowry was mistaken when he testified (Doc. No. 31 at 21-22) that Officer Progar told him that immediately upon Officer Progar approaching and engaging the female driver, Defendant got out of the Vehicle and went inside the store. According to the stipulation, however, Officer Progar would have testified that he did not see Defendant depart the Vehicle at any time (let alone see Defendant depart suspiciously upon seeing a police officer, *i.e.*, Officer Progar), but rather merely noticed Defendant's absence from the Vehicle after he spoke with Sergeant Lowry and then walked back to the Vehicle. The Court accepts this stipulated testimony rather than the testimony of Sergeant Lowry; the Court concludes not that Sergeant Lowry knowingly testified falsely, but rather that his expressed recollection as to what he was told by Officer Progar must give way to Officer Progar's recollection. It is Officer Progar rather than Sergeant Lowry, after all, who was the one who knew at the time what he (Officer Progar) had just seen, and the Court sees no reason to believe that Officer Progar has since forgotten what he actually did (or did not) see or that he would have misreported what he saw to Sergeant Lowry. This means that Officer Progar, contrary to Sergeant Lowry's testimony, did not tell Sergeant Lowry that Defendant left the Vehicle in a possibly suspicious (or "furtive," as the Government calls it) manner. As noted above, the Government concedes this point, and disavows any reliance on Sergeant Lowry's belief that he was told this by Officer Progar; the Government does not, for example, argue that Sergeant Lowry's belief, though mistaken, was objectively reasonable and thus appropriately capable of supporting probable cause. Instead, the Government argues that even assuming Sergeant Lowry knew (or at least reasonably believed) at the time only that Defendant had merely seen Officer Progar prior to entering the store (without believing additionally that Defendant had furtively slipped out of and away from the Vehicle upon seeing Sergeant Lowry), Sergeant Lowry nevertheless had probable cause to arrest Defendant when he did. (Doc. No. 33 at 9 n.4).

The Court tips its hat to the Assistant United States Attorney for making the disclosure regarding Officer Progar's stipulated testimony even though he clearly knew it could result in his losing on the motion to suppress. He manifestly was less interested in winning for the sake of winning than he was in the Court and defense counsel having material impeaching information (whether or not required to be disclosed) vital to a fair and just resolution of the motion.

(*Id.*) Sergeant Lowry arrived at the scene within minutes, and Officer Progar got out of his patrol car and walked over to Sergeant Lowry to explain the situation. (*Id.*) The two officers then walked over to the Vehicle together to inform the female driver that she had an outstanding arrest warrant. Only at this point, for the first time, Officer Progar noticed that Defendant was no longer in the passenger seat of the Vehicle. (*Id.*)

Officer Progar briefly communicated to Sergeant Lowry what he noticed about Defendant. (Tr. at 21.) Sergeant Lowry thought Defendant's action was odd, but had no reason to suspect Defendant of any wrongdoing. (*See id.* at 22.)[3] Per the police department's policy, to inquire whether Defendant has a valid driver's license to drive the Vehicle rather than tow it while the female driver is in custody, Sergeant Lowry instructed Officers Progar and Smith (who arrived sometime after Sergeant Lowry) to go inside the truck stop's store and look for Defendant. (*Id.* at 23-24.)

When the three men emerged from the store, Sergeant Lowry asked the two officers, "Where was he at?" (*Id.* at 25.) One of the officers answered that Defendant was coming out of the restroom. (*Id.*) Sergeant Lowry instructed the officers to check Defendant's driver's license, and he then walked into the gas station restroom himself based on his hunch that criminal activity might be afoot. (*Id.* at 25.) Defendant was not handcuffed or otherwise restricted by officers at this point. (*Id.* at 60.) In the restroom, Sergeant Lowry saw the handle of a pistol, in plain view, that was wedged inside a toilet seat-cover dispenser in the middle stall; nobody else was in the restroom at the time. (*Id.* at 25-26.)

---

[3] Sergeant Lowry testified to this effect even though, as indicated above, he was under the mistaken and more incriminating impression that Officer Progar had conveyed that "all of a sudden, an officer [Progar] approache[d] the vehicle that he's involved in, and he immediately trie[d] to distance himself from that contact." (Tr. at 22.)

3

Sergeant Lowry inferred that Defendant hid the pistol in the toilet seat dispenser and believed that Defendant had violated Tenn. Code Ann. § 39-17-1307(a)(1), which prohibits "carr[ying], with the intent to go armed, a firearm." (*See id.* at 29, 41-44.) Sergeant Lowry additionally believed that Defendant had engaged in evidence tampering by concealing the pistol, in violation of Tenn. Code Ann. § 39-16-503. (*Id.* at 44.) Upon this discovery, Sergeant Lowry immediately ordered Defendant be handcuffed via radio. (*Id.* at 29.)

Sergeant Lowry then secured the gas station restroom, came back out, and instructed Officer Progar to follow him back into the restroom to take pictures of and secure the pistol. (*Id.* at 29-31.) He also saw that Defendant was handcuffed. (*Id.*) It took less than five minutes for Sergeant Lowry and Officer Progar to then come out of the gas station store. (*Id.* at 31.)

As soon as he came back out, Sergeant Lowry advised Defendant of his *Miranda* rights (*Id.* at 31-32.) There is no question that at this time, Defendant was not only "in custody" for *Miranda* purposes, but also under arrest rather than merely detained temporarily for investigative purposes. Defendant thereafter was questioned and made allegedly incriminating statements, which Defendant now seeks to suppress. (*Id.* at 34-39.)

## DISCUSSION

The Court finds that the officers did not have probable cause to arrest Defendant and that therefore the fruits of the illegal arrest—his post-arrest statements—must be suppressed.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[A]n arresting officer must be able to articulate 'concrete facts' from which the 'totality of the circumstances' indicates that an arrest is warranted." *United States v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000) (citation omitted).

"Probable cause exists where the facts, at the time of the arrest, were sufficient to lead a prudent person to believe that a crime had been committed or was in the process of being committed." *United States v. Jiminez*, 654 F. App'x 815, 819 (6th Cir. 2016) (citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). Probable cause is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The burden is on the government to prove the police had the requisite probable cause. *United States v. Terry*, 522 F.3d 645, 650 (6th Cir. 2008).

Sergeant Lowry testified that he ordered Defendant's arrest because he believed Defendant had violated Tenn. Code Ann. § 39-17-1307(a)(1), which prohibits "carrying a firearm" "with the intent to go armed."[4] Obviously, probable cause that Defendant committed such an offense would require probable cause that Defendant had "carried" the firearm during this incident. The Government's view is that at the time of the arrest, Sergeant Lowry had probable cause to believe that the gun found in the restroom had been carried there (and then hidden) by Defendant, even though no one had seen Defendant with the gun and Defendant at that time had not stated or otherwise indicated that he had carried it. For the reasons set forth below, the Court rejects the Government's view.

At the time of Defendant's arrest, Sergeant Lowry reasonably believed, at most, only that: (1) Defendant got out of the Vehicle at some point after seeing Officer Progar and before the driver's arrest, and (2) Defendant thereafter walked out of the truck stop restroom where, a few minutes later, Sergeant Lowry found a gun hidden in the toilet seat-cover dispenser. The

---

[4] At the time Defendant was arrested, the officers did not know that Defendant was a convicted felon and thus could be arrested as a felon in possession of a firearm. (*Id.* at 41.) Only after Defendant's post-arrest questioning did Sergeant Lowry and other officers discover that Defendant was a convicted felon. (*Id.* at 40-41.)

5

Government admits that this was the extent of Sergeant Lowry's knowledge (or reasonable belief), Doc. No. 33 at 9, but nevertheless claims that he had probable cause based on these facts.

The record does not reflect the volume of patrons in the store at the time in question. There is no indication that there was a dearth of patrons, such that officers might reasonably conclude that Defendant had been the only person, or one of very few persons, in the restroom for some period of time. Also, the Court takes judicial notice of the fact that the truck stop at issue was a large one ran by a prominent national operator of truck stops, and was located right off a busy interstate highway in the well-traveled corridor just north of Nashville.[5] There is simply no reason to doubt that many other persons besides Defendant might have gone into the restroom between the time the gun was hidden and the time it was recovered by Sergeant Lowry. After all, the gun was not sitting, for example, out on the sink counter where anyone could see it; it was in one of the stalls (in which no one reported seeing Defendant). The Government has provided, and the Court sees, no reason to believe that the gun could not have been there for some period of time prior to Defendant entering the restroom—long enough for any number of persons to have hidden the gun there.

The Government's suppression hearing Exhibits 2 and 3 reflect that the gun would have been visible to anyone entering the stall. And the Court acknowledges the likelihood (though not the certainty) that someone seeing the gun upon entering the stall would have reported it promptly. But even assuming that someone entering the stall and seeing the gun would have reported it, that does not extinguish the possibility that many persons may have been in and out of the restroom prior to anyone entering that particular stall after the gun was hidden there. The stall was only one of three in that restroom, Tr. at 26, and of course far from every person entering the restroom

---

[5] The relative largeness of the truck stop is reflected in the Government's Exhibit 1 at the suppression hearing.

would have even gone into a stall. Thus, it stands to reason that only a small percentage of persons entering the restroom would have entered the stall and seen the gun; many persons could have been in the restroom, after the gun was hidden, without going into that stall and finding the gun there. The Government provides no reason for officers to have believed that Defendant was not merely one of these persons but rather than the person who hid the gun.

Accordingly, though Defendant *could* have been the former rather than the latter, the record reflects that the officers could not reasonably conclude that this was anything other than a longshot mathematically. In other words, this was mere speculation.[6] Objectively, it was mere guesswork to believe that Defendant had been the one who hid the gun in the restroom rather than a mere bystander who had been in the restroom. And "mere speculation that a crime could be occurring is insufficient to establish probable cause." *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005). In short, there were not reasonable grounds to believe that Defendant, as opposed to someone else, had left the gun there. The Government therefore has failed to meet its burden to show probable cause.

The Government implies that it gets over the hump as to probable cause based on the mere fact that Defendant had seen a police officer sometime before going into the store (and restroom). But the Court can ascribe virtually no importance to this fact. To be sure, sometimes an individual's particular response to seeing an officer can be objectively suspicious and thus contribute to a finding of probable cause. In Defendant's case, however, prior to his arrest there was no reason to believe that his going into the store and the restroom was actually in response to seeing Officer

---

[6] The evidence at the suppression hearing indicated that as it turned out, this speculation was on target—that it indeed had been Defendant who had brought in and hidden the gun there. The Court gives credit to Sergeant Lowry for being right. But the correctness of his speculation does not change the fact that it was speculation, and not a belief supported by probable cause.

7

Progar, rather than in response to the typical desire of someone at a truck stop to simply use the restroom.

The Court understands the police officers face the difficult task of making quick (and sometimes split-second) decisions in fulfilling their mission to fight crime and ensure public safety. It also understands that it must, in deciding probable cause, count in the Government's favor not only facts known to the arresting officers, but also any "reasonable conclusions 'drawn from the facts known to the arresting officer at the time of the arrest.'" *Jiminez*, 654 F. App'x at 819. The Court also recognizes that probable cause is not the highest of standards—requiring, to say the least, nothing even approaching certainty; it requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity. *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc). But even this relatively low standard is not satisfied when all the officers knew (or reasonably believed), or all that any reasonable officer would have believed, was that the arrestee was someone who was in the vicinity of the concealed prohibited item, without any reason to believe either that many others had not recently been in the same vicinity or that the arrestee would have seen and reported the item had he not been the one who hid the evidence

Based on the foregoing, the Court finds that Defendant was arrested without the necessary probable cause and therefore Defendant's arrest was unlawful. Because Defendant's arrest was unlawful, Defendant's subsequent statements must be suppressed as the fruit of the unlawful arrest. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).[7]

---

[7] Given that the Court grants Defendant's Motion to Suppress the on this basis, it will not address the parties' other arguments.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (Doc. No. 18) will be granted.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE